**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**LARRY FORD,**

      **Petitioner,**

**vs.**                                          **Case No. 4:13cv1-MW/CAS**

**SECRETARY, DEPARTMENT OF CORRECTIONS,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY AMENDED § 2254 PETITION

On December 28, 2012, Petitioner Larry Ford, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. Petitioner subsequently, on May 28, 2014, filed an amended § 2254 petition. Doc. 15. On January 27, 2014, Respondent filed an answer, with exhibits. Doc. 21. Petitioner filed a reply on April 23, 2014. Doc. 25.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons stated herein, the

pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief, and the amended § 2254 petition should be denied.

## State Court Proceedings

On September 23, 1997, Petitioner Larry Ford pled no contest to four counts in the Second Judicial Circuit, Leon County, in case number 1997-CF-1664: false imprisonment, aggravated assault with a deadly weapon, possession of cocaine, and burglary of a conveyance with a person assaulted. Doc. 21 Ex. A at 13-14. The court adjudicated Ford guilty and sentenced him, pursuant to the plea agreement, to five (5) years in prison on each of the first three counts and to life in prison on the fourth count, followed by fifteen (15) years' probation, with all counts to run concurrently and the imprisonment portion suspended upon service of five (5) years in prison. *Id.* at 15-28.

Ford was released from the Department of Corrections on December 24, 2003, to begin serving his probation term. *See* Doc. 21 Ex. A at 171. On September 10, 2007, a violation of probation (VOP) affidavit was filed against Ford alleging he committed three violations of the conditions of his probation. *Id.* Ex. B at 293-94. A VOP hearing took place on November 28, 2007. *Id.* Ex. C (transcript). The trial court found the first violation occurred and, thereafter, the trial court revoked Ford's probation and sentenced him to life in prison. *Id.* Ex. B at 314-23; Ex. C at 42-45.

Ford appealed his judgment and sentence to the First District Court of Appeal (DCA), assigned case number 1D08-007, and his attorney filed an initial brief raising two points of error: (1) the court erred in revoking probation for a condition not alleged in the State's affidavit; and (2) the court erred in imposing sentence pursuant to a Criminal

Punishment Code scoresheet for a 1997 offense.  Doc. 21 Ex. B at 324, Ex. G.  The

State filed an answer brief.  *Id.* Ex. H.  On May 29, 2009, the First DCA affirmed the

case with a one-paragraph written opinion:

> We affirm the revocation of appellant's probation but remand with
> directions to the trial court to enter an amended order listing the conditions
> of probation that appellant violated.  *See* Robinson v. State, 963 So. 2d
> 339 (Fla. 1st DCA 2007).  We affirm appellant's sentence.

*Id.* Ex. J; Ford v. State, 13 So. 3d 502 (Fla. 1st DCA 2009).  Ford filed a motion for

rehearing, which the First DCA denied.  Doc. 21 Exs. K, L.  The mandate issued August

18, 2009.  *Id.* Ex. M.

In the meantime, on August 20, 2008, Ford, through counsel, had also filed a

Motion to Correct Sentence pursuant to Florida Rule of Criminal Procedure 3.800(b)(2)

in the state trial court.  *Id.* Ex. E at 343-67.  In an interlocutory order rendered

September 5, 2008, the trial court denied the motion in part and granted it in part.  *Id.*

Ex. E at 368-72.  Specifically, the court directed that Ford's judgment and sentence be

amended to reflect entitlement to credit for all time previously served in DOC in the case

and further directed that the Order of Revocation of Probation be amended to indicate

Ford did not admit to the VOP.  *Id.* at 370.   The court also set a calendar call for

September 9, 2008, to attempt to resolve Ford's claim that the Order of Revocation of

Probation specify which conditions of probation he violated.  *Id.*  In a supplemental order

rendered September 11, 2008, the court found the transcript from the VOP hearing

established that Ford was found to have violated the first allegation in the VOP Affidavit

and, although the first allegation mentioned only Condition 3 and not Condition 5, a legal

and factual basis existed for finding violations of both conditions within the first

allegation.  *Id.* Ex. F at 390.  Accordingly, as to that remaining claim, the court directed

that the Amended Order of Revocation of Probation include a finding that Ford violated

Condition 3 (leaving the county without first procuring the probation officer's consent) as

well as Condition 5 (violating the law) of his probation by committing the acts set forth in

the first allegation of the VOP affidavit dated September 10, 2007.  *Id.* at 391.

On September 2, 2009, Ford filed, in the state trial court, a pro se motion for

post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, alleging

three claims of ineffective assistance of trial counsel relating to the revocation of his

probation.  *Id.* Ex. N at 1-33.  On July 30, 2010, the state post-conviction trial court

summarily denied the motion, concluding that Ford had not shown deficient

performance by counsel.  *Id.* at 36-41.  In addition, on August 6, 2010, the court entered

an Order on Remand Directing Clerk to Amend Order of Revocation of Probation:

> THIS CAUSE came before the Court upon remand from the First
> District Court of Appeal.  The appellate court affirmed the revocation of
> Defendant's probation, but remanded with directions to enter an amended
> order listing the conditions of probation that Defendant violated.  Ford v.
> State, 13 So. 3d 502 (Fla. 1st DCA 2009).  Although the case was
> remanded by mandate issued Aug. 18, 2009, this Court only recently
> discovered, while addressing Defendant's Motion for Postconviction Relief,
> that the revocation of probation order was never amended to include the
> conditions of probation violated.
>
> In this Court's Supplemental Order on Defendant's Motion to
> Correct Sentencing Error Under Rule 3.800(b)(2), entered Sept. 11, 2008,
> the Clerk of Court was directed to issue an Amended Order of Revocation
> of Probation deleting a reference to Defendant admitting violation of
> probation and adding that Defendant was found guilty of violating certain
> conditions.  An Amended Order of Revocation of Probation was entered
> on Oct. 1, 2008, but apparently only the first correction was made and the

addition regarding the specific violations was not included.  Upon review of the VOP hearing transcript, the Court at this time orders an amendment slightly different than that set forth in the Supplemental Order.  Accordingly, the Clerk of Court is directed to amend the Amended Order of Revocation of Probation entered September 31 [sic], 2008, as follows.

It is therefore,

**ORDERED and ADJUDGED that the Leon County Clerk of Court shall issue a Second Amended Order of Revocation of Probation, adding the following statement: "The Court found that the offender violated Condition 3 (leaving the county of residence without first procuring his probation officer's consent) as set forth in the allegation in the 9/10/07 VOP Affidavit.  The Court also found that although the first allegation of the VOP affidavit did not specifically state a violation of condition 5 (violating the law), the facts alleged described a violation of condition 5 and the facts presented at the hearing supported it.  Either of these violations supports the Court's finding of willful and substantial violation of probation."**

*Id.* at 81-82.  On August 10, 2010, Ford filed a motion for rehearing or clarification, which the court denied by order on September 10, 2010.  *Id.* at 69-74 (motion), 75-76 (order).

Ford appealed the denial of his Rule 3.850 motion to the First DCA and filed an initial brief in the case, assigned number 1D10-5806.  *Id.* at 77, Ex. O.  The State filed a notice that it would not file an answer brief.  *Id.* Ex. P.  The First DCA affirmed the case per curiam without a written opinion on February 15, 2011.  *Id.* Ex. Q; Ford v. State, 57 So. 3d 849 (Fla. 1st DCA 2011) (table).  Ford filed a motion for rehearing and rehearing en banc, which the First DCA denied by order on March 30, 2011.  Doc. 21 Exs. R (motion), S (order).  The mandate issued April 18, 2011.  *Id.* Ex. T.

In the meantime, while the appeal was pending, on September 28, 2010, Ford filed a pro se motion to withdraw his original plea.  Doc. 21 Ex. U at 1-25.  By order rendered November 12, 2010, the state trial court denied this motion, finding it untimely and not subject to any exceptions under Florida Rule of Criminal Procedure 3.850(b).  *Id.* at 26-27.  Ford appealed to the First DCA and filed a pro se initial brief, assigned case number 1D10-6614.  *Id.* Ex. V.  The State filed a notice that it would not file an answer brief.  *Id.* Ex. W.  The First DCA per curiam affirmed the case without a written opinion on June 9, 2011.  *Id.* Ex. X; Ford v. State, 65 So. 3d 1057 (Fla. 1st DCA 2011) (table).  Ford filed a motion for rehearing, which the First DCA denied by order on August 1, 2011.  Doc. 21 Exs. Y (motion), Z (order).  The mandate issued August 17, 2011.  *Id.* Ex. AA.

On December 28, 2011, Ford filed a pro se motion to correct or vacate his sentence pursuant to Florida Rule of Criminal Procedure 3.800(a), and he filed an amended Rule 3.800(a) motion on February 15, 2012.  *Id.* Ex. BB at 8-20, 22-34.  The trial court denied relief on April 3, 2012.  *Id.* at 35-198.  Ford appealed to the First DCA, which per curiam affirmed the case without an opinion on September 24, 2012.  *Id.* Ex. CC; Ford v. State, 97 So. 3d 827 (Fla. 1st DCA 2012) (table).  The mandate issued October 22, 2012.  Doc. 21 Ex. DD.

On October 28, 2013, Ford filed a motion to correct sentencing error pursuant to Rule 3.800(a).  *Id.* Ex. EE at 1-17.  By order rendered November 5, 2013, the state trial court denied the motion.  *Id.* at 18.  Ford appealed to the First DCA, assigned case number 1D13-5955, and that court per curiam affirmed the case without an opinion on

October 3, 2014.  Ford v. State, 163 So. 3d 1184 (Fla. 1st DCA 2014) (table).  The

mandate issued October 29, 2014.  *See* online docket for 1D13-5955 at www.1dca.org.

As indicated above, on December 28, 2012, Ford filed a petition for writ of

habeas corpus pursuant to 28 U.S.C. § 2254 in this Court.  Doc. 1.  He subsequently

filed an amended § 2254 petition.  Doc. 15.  He raises three grounds, all alleging

ineffective assistance of counsel (IAC) in connection with the revocation of his

probation:

> (1) IAC – Petitioner's counsel failed to conduct any investigation into the
> policies and procedures of the probation office allowing a probationer to
> travel out of the county.  Doc. 15 at 5-8.

> (2) IAC – Petitioner's counsel failed to object to the testimony at the
> revocation hearing regarding alleged instructions given to Petitioner by his
> probation officer which resulted in a special or new condition not imposed
> by the trial court.  *Id.* at 10-14.

> (3) IAC – Petitioner's counsel failed to object to the trial court's findings
> that Petitioner violated Condition (5) of his probation, based on offenses
> with which he was never charged, nor properly placed on notice prior to
> the hearing.  *Id.* at 16-21.

Respondent has filed an answer and exhibits.  Doc. 21. Ford has filed a reply.  Doc. 25.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective

Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for

persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See* Williams v. Taylor, 529 U.S. 362 (2000); Gill v. Mecusker, 633 F.3d 1272 (11th Cir. 2011).

If a state prisoner's habeas petition "includes a claim that has been 'adjudicated on the merits in State court proceedings,' § 2254(d), an additional restriction applies." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011). The federal court may not grant relief unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen, 131 S.Ct. at 1398 (quoting Harrington v. Richter, 131 S.Ct. 770, 786 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S.Ct. at 1388.

Also relevant here, in Strickland v. Washington, the U.S. Supreme Court adopted a two-part test for IAC claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. 668, 687 (1984).  To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688.  To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schiro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.*  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*

## <u>Ground 1</u>:  IAC – Failure to Investigate

In his first ground, Petitioner Ford asserts his counsel rendered ineffective assistance by failing to conduct any investigation into the policies and procedures of the probation office allowing a probationer to travel out of the county.  Doc. 15 at 5-8. Ford

Case 4:13-cv-00001-MW-CAS   Document 27   Filed 09/16/15   Page 10 of 24

raised this argument as the first claim in his Rule 3.850 motion filed in state court.  Doc.

21 Ex. N at 3-8.  The state post-conviction trial court denied the claim, making the

following findings:

> Defendant alleges counsel was ineffective for failure to investigate
> the probation office polices and procedures for allowing probationers to
> travel out of the county, which would have shown that written
> documentation of permission to travel to another county is required.
> Defendant claims that if counsel had been aware of the documentation
> requirement, then he could have refuted the probation officer's testimony
> to the contrary, which would have prevented the Court from remarking, "I
> didn't hear any evidence that written documentation was required."
> Defendant describes this statement as "the court's sole basis for the
> violation."
>
> As shown by the record, this claim is without merit.  Lack of written
> documentation of permission to travel was not the sole basis for the
> violation.  Probation Officer John Stewart testified as to his office's policy
> regarding probationers traveling to and from work in another county.  He
> stated offenders must request permission from him first, which he usually
> grants.  He then advises them that they have permission to travel to work,
> and maybe stop for lunch on the way to or from work, but not to shop or
> go to any personal residences other than their job in the other county.
> *Exh. 2 - 11/28/07 VOP Hearing Trans., pp. 35-36 (indicated by page
> numbers in remainder of order).*  Officer Stewart testified that written
> permission is not required; the probation officers give verbal permission.
> *26.*
>
> Officer Stewart testified that he went over the terms of Defendant's
> probation with Defendant, who understood them.  *18.*  Defendant had
> permission to travel to Duval County solely to go to work at Setzer's and
> Village Inn.  *26.*  Defendant did not ask Officer Stewart for permission to
> visit his ex-wife in Duval County, therefore, when he visited her as alleged,
> it was without Officer Stewart's permission.  *18-19.*  Officer Stewart
> testified he violated Defendant for being in Duval County at a residence
> where he did not have permission to be.  *30.*  The Court based its ruling
> that Defendant violated condition 3 on Mr. Stewart's testimony that he
> instructed Defendant he could go to Duval County for work purposes only.
> *43.*  The Court expressly stated, "[T]he testimony before me from the
> officer is, this is what I told him, and obviously he wasn't at work if he was
> over at his wife's house.  So that would be a violation."  *43.*

> Further, as Defendant concedes, counsel did question Officer
> Stewart about documentation of Defendant's permission to travel out of
> the county for work during his cross-examination of the probation officer
> regarding the first allegation.  *26, 32-33.*  Counsel also repeatedly argued
> that Officer Stewart should have had written documentation of Defendant's
> instructions regarding travel in his file.  *38-40, 42.*  Defendant fails to show
> deficient performance on the part of counsel.

*Id.* at 37-39.  On appeal, the First DCA affirmed without an opinion.  These rulings are

entitled to AEDPA deference and review is limited to the record before the state court.

*See* 28 U.S.C. § 2254(d); <u>Cullen</u>, 131 S. Ct. at 1402; <u>Richter</u>, 131 S. Ct. at 784-85;

<u>Wright</u>, 278 F.3d at 1255.

The record supports the findings of the state post-conviction trial court.  In

particular, at the VOP hearing, Ford's probation officer, John Stewart, testified he had

supervised Ford from February 2, 2007.  Doc. 21 Ex. C at 17-18.  He testified that he

went over the terms of his probation with Ford and Ford seemed to understand the

terms.  *Id.* at 18.  Stewart testified as follows:

> Q Well, briefly some [sic] up a little bit what pertains to this case.
>
> A Okay.  As it pertains to the violations, condition two is – or excuse me,
> condition three is, you will not change your residence or employment, or
> leave the county of your residence without first procuring the consent of
> your officer.
>
> Q Now, did Mr. Ford change from that – strike that.  Did Mr. Ford leave his
> county of residence without your permission?
>
> A Yes, sir.
>
> Q How did he do that, or when did he do that?
>
> A Okay.  As I stated in the violation report, on April 9th, 2007, without my
> permission, the offender traveled to 2553 South – excuse me, State Road

A1A, number 402, in Atlantic Beach, Florida.  And he went to the residence of Tammy Ford, and he met her at the door.  He grabbed her arm, pushed her into the apartment saying he just wanted to talk.

I got this information from –

MR. BOOTHE [defense counsel]: Objection, hearsay.

THE COURT: Overruled.

A I got this information from Ms. Ford, and I also got this information from the petition for injunction for protection against domestic violence in Case No. 2007DR1421, in Duval County.

Q Mr. Stewart, did Mr. Ford ever come to you and ask you for permission to go visit his wife?

A No, sir.

*Id.* at 18-19.  On cross-examination, defense counsel inquired about Ford's ability to travel to Duval County:

Q Mr. Stewart, where did Mr. Ford work?

A When?

Q Well, if I look at your violation report, you said that – it has – you have it listed where he works.

A The last place he worked was at Setzer's.

Q And where is that?

A That's on Phillips Highway.

Q And in what city?

A Duval County.

Q Jacksonville, Duval County?

A That's correct.

Q So he travelled to Duval County every day?

A I don't know what he did every day.  I know that he had permission to go to work at Setzer's, and prior to that he had permission to work go to [sic] at Village Inn, at the time of this – he violated this injunction, or he – Ms. Ford had to file an injunction on him.

Q I'm saying that he had permission to go to Duval County.

A He had permission to go to work at the Village Inn and at Setzer's only.

Q Do you have the paperwork in here that says that?

A That's a verbal permission.  We do not – we're not required to give a written permit.

Q You don't have to give a written permit on a blanket permit?  A blanket travel permit means you can go back and forth between from Duval County to Clay County where you live any time you want because they're neighboring counties, and that's okay.  Don't worry about it.  It's just too much technicality for me to worry about.

A That's not entirely correct, sir.  It only involves work.

Q Where does it say that?  Where do you instruct him on that?  Where is it documented in that file where you said you instructed him he could only go to work and back?

A It's a verbal permission, sir.

*Id.* at 25-26.  On further questioning, Stewart testified, "I could say for sure he wasn't working when he went to her house, and threatened her, and forced his way into her house."  *Id.* at 29.  Stewart also testified, "I violated Mr. Ford for being in Duval County at a residence that he did not have permission to be at."  *Id.* at 30.  On redirect, Stewart further testified:

Q (By Mr. Jensen-Friedman) Mr. Stewart, there's a lot of discussion about policy in regards to going to and from work.  Can you briefly explain that policy with your office for probationing?

A I make it very specific.  An offender is allowed to travel for work – if they ask me – if they want to travel somewhere, I ask them, where do they want to go.  And if they say, I have to work in Duval County, I, 99 percent of the time say, you have permission to travel to Duval County to go to work.  You do not have permission to shop.  You don't have permission to go by other people's homes.  You have permission to go to and from work, maybe stop off for lunch at a McDonald's in the direction of your job, and from the direction of your job.  That's what you have permission to do.

Q I'm not too familiar with that area.  How far is Duval County from where Mr. Ford was living at the time?

A He probably is – his last job at Setzer's, he was probably 35 miles from his home.  The Village Inn at the time when this first violation occurred, I would say is probably slightly closer to his home.

Q And just to clarify, he's not allowed to go to any personal residence outside of his job in Duval County?

A That's correct.

*Id.* at 35-36.

In addition, Tammy Ford testified at the VOP hearing.  She testified that in April 2007, she lived in Jacksonville on Atlantic Boulevard.  *Id.* at 2.  She testified that Ford "pushed his way into my home" and "[w]e had a struggle."  *Id.* at 10.  She "tried to get him to leave" and she "warned him" that she "was going to call the police if he didn't," and "[h]e still pushed his way into [her] home."  *Id.*  She testified that he was not invited, there was physical contact, she did not give him permission to touch her, and she told him she did not want him touching her.  *Id.*

Based on the foregoing, Ford has not shown the state court's rejection of his claim was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See id.*; 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Ground 2: IAC – Failure to Object to Probation Officer's Testimony

In his second ground, Ford asserts his trial counsel rendered ineffective assistance by failing to object to the testimony of his probation officer, John Stewart, concerning instructions he gave Ford regarding out-of-county travel.  Doc. 15 at 10-14. Ford raised this argument as the second claim in his Rule 3.850 motion filed in state court.  Doc. 21 Ex. N at 8-13.  The state post-conviction trial court denied the claim, making the following findings:

> Defendant next alleges counsel was ineffective because he failed to object that Officer Stewart's instructions to Defendant that he could only travel in Duval County to go to and from work resulted in a new condition not imposed by the Court, and failed to argue that Defendant could not be found guilty of violating a condition not orally pronounced by the Court.

> Defendant is incorrect that Officer Stewart's instructions amounted to a new and separate condition of probation.  Condition 3 of Defendant's Order of Probation states "You will not change your residence or employment or leave the county of your residence without first procuring the consent of your officer" (emphasis added).  *Exh. 3 - Order of Probation*.  Officer Stewart testified Defendant had obtained his consent to travel to Duval County for work, but did not have his permission to visit his ex-wife's residence in Duval County.  *18-19, 26.*  Officer Stewart's instructions granting Defendant permission to travel to Duval County but limiting it to work-related travel were a part of condition 3.  Accordingly, there was no basis for counsel to object or argue on these grounds. Counsel cannot be held ineffective for failure to make a nonmeritorious objection.

*Id.* at 39.  On appeal, the First DCA affirmed without an opinion.  These rulings are entitled to AEDPA deference and review is limited to the record before the state court. *See* 28 U.S.C. § 2254(d); <u>Cullen</u>, 131 S. Ct. at 1402; <u>Richter</u>, 131 S. Ct. at 784-85; <u>Wright</u>, 278 F.3d at 1255.

The record supports the findings of the state post-conviction trial court.  As set forth above, in the analysis of Ground 1, Officer Stewart, in response to questions by defense counsel, testified at the VOP hearing that he had given Ford verbal permission to travel to and from Duval County for work purposes and that he violated Ford for being in Duval County at a residence without permission.  Doc. 21 Ex. C at 25-26, 30.  As the state court explained, Condition (3) of Ford's probation provides that he "will not . . . leave the county of [his] residence without first procuring the consent of [his] officer."  *Id.* Ex. N at 64.  Officer Stewart confirmed this condition and also testified that Ford did not have permission to visit Tammy Ford's residence in Duval County; Ford had permission to go to Duval County only for work purposes.  *Id.* Ex. C at 18-19, 35-36.

Given the officer's testimony and Condition (3), defense counsel did not render ineffective assistance by not objecting as argued by Ford.  Ford has not shown the state court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### <u>Ground 3</u>: IAC – Failure to Object to Condition (5) Findings

In his third ground, Ford asserts his trial counsel rendered ineffective assistance by failing to object to the state trial court's findings that Ford violated Condition (5) of his probation based on offenses he was never charged with or placed on notice of prior to the hearing.  Doc. 15 at 16-21.  Ford raised this argument as the third claim in his Rule 3.850 motion.  Doc. 21 Ex. N at 14-19.  The state post-conviction trial court denied the claim, making the following findings:

> Finally, Defendant alleges counsel was ineffective for failing to object to the Court's finding that Defendant violated condition 5 by committing battery upon Tammy Ford, which Defendant claims was not charged in the VOP Affidavit.  The affidavit alleges that Defendant violated condition 3 by traveling out of Clay County to Ms. Ford's Duval County residence, where he grabbed, pushed and wrestled with her.  *Exh. 1.*  Although the affidavit also accuses Defendant of twice violating condition 5 (new law violation) by battering and threatening Darnell Mona Davis, Defendant was found not guilty of violating probation based on those two allegations.
>
> This claim is without merit as defense counsel actually did object.  Prior to the Court's ruling, defense counsel argued that Defendant was not charged with battering Ms. Ford, and was charged only with traveling to Ms. Ford's house in Duval County without permission.  *38-39; 41.*  The Court, after finding a violation of condition 3 based on unauthorized travel out of the county when visiting Ms. Ford's residence, acknowledged that the affidavit did not *specifically* state a violation of condition 5 by battery on Ms. Ford, but added that the facts alleged described a violation of condition 5 and the evidence presented at the hearing supported it.  *42-45.*  Defense counsel then expressly preserved the issue for appeal after the Court ruled, and stated that he did not believe the Court could find Defendant guilty of and sentence him for a violation of a condition that was not specifically charged, even though the allegation of battery against Ms. Ford was included in the allegation of unauthorized out-of-county travel.  *50-51, 57.*
>
> Defendant has not shown deficient performance on the part of counsel.

*Id.* at 39-40.  The state court's rulings, affirmed on appeal without opinion, are entitled to

AEDPA deference and are supported by the record.  *See* 28 U.S.C. § 2254(d); Cullen,

131 S. Ct. at 1402; Harrington, 131 S. Ct. at 784-85; Wright, 278 F.3d at 1255.

In particular, the record supports the state post-conviction court's finding that

defense counsel did object.  At the VOP hearing, defense counsel made the following

argument:

> Violation number one, leaving the county without permission.
> That's the charge, not battering Ms. Ford.  Police didn't even write a
> report.  Police never came.  Police never arrested Mr. Ford.  Police didn't
> find probable cause, which is a lower standard than the preponderance of
> the evidence which is the standard that this Court must find to find the [sic]
> Mr. Ford violated his probation.
>
> The police did not find any probable cause that he ever went to her
> house, battered her, tussled with her or anything else.  And – but he's not
> even charged with that.  He's charged with leaving the county without
> permission and being in Duval County where he worked.
>
> He had permission to go to Duval County.  He had blanket
> permission to go to Duval County.  His probation officer says he doesn't
> have it documented in that file, he specifically tells all of his probationers,
> you can stop at McDonald's if it's on the way home.  I guess you can stop
> at the Shell station, but not at the Exxon station.
>
> Probation is not discretionary on the part of the probationer, it is
> following orders on the part of the probation officer.  You don't say – I've
> seen probationers and community control people violated for stopping at
> McDonald's on the way home from work because they didn't have
> permission to do that, and that was noted in the file.  And it says to and
> from work only.  Not even to stop for gas.  You can stop for gas when you
> leave home and when you get back, and that's it.
>
> He didn't have anything in that file.  So he leaves it to the discretion
> of Mr. Ford when he can and can't go to Duval County, and when he's
> supposed not be [sic] in Duval County and when he's supposed to be in
> Clay County.  And then when he's in Duval County, supposedly doing
> something he's never been charged with, he violates him for being out of

the county without permission and has the audacity to stand up here and say he has nothing in that file to say how specifically he instructs these probationers that they cannot do this, and the McDonald's on the way home. It has to be on the direct way home, and they can't go shopping, and all those things.

I'll submit that's hokey. That's horsefeathers. I mean, you're supposed to have it in the file. You're supposed to instruct the probationer as to what he can and can't do. He hasn't been instructed that he couldn't go to Duval County solely for work purposes, or to work and back, or to stop at the McDonald's. Well, what about the Burger King? What about one block off the beaten path? What about two blocks off the beaten path? That's why you can't give discretionary probation, because the probationer has to be at orders of the probation officer.

Now, if he didn't do his job – he can't violate him for not following an order he never gave him, and everything else is hearsay. And I would ask the Court to find Mr. Ford not in violation of his probation. Because the State simply has not proven their case.

Doc. 21 Ex. C at 38-40. Defense counsel further argued:

He is accused of being out of the county of his residence without permission, and he had blanket permission to do it.

Now, if they want to charge him with violation of condition five for attacking Ms. Ford, then file a police report, have him arrested, bring him in here, bring the cops in here. Let's have a real hearing on some real facts. But not on, maybe he can go to the McDonald's, and maybe he can do this, and maybe – after 17 years [that Officer Stewart has worked with probationers], maybe he's getting sloppy because there's nothing in that file that says he ordered this man not to be in Duval County for only work purposes, to go straight and come back. It's not in evidence, and how can he be violated for something he hasn't been instructed on?

Regardless of what you think of Mr. Ford, regardless of what you think of Mr. Ford or anything else in the case, they've got to bring a case. That's their job. If they don't do it, he'll give you another shot at him, but they haven't done it today.

*Id.* at 41-42.

In addition, the record supports the state post-conviction court's findings regarding the VOP found by the court.  At the conclusion of the VOP hearing, the judge ruled:

> I do find a violation as to the first allegation.  And I'm going to separate this because I think they really kind of have to be treated as separate charges relative to hearsay as support and hearsay not.
>
> A couple of things on that.  I didn't hear any evidence that it's required to be some kind of written documentation in it, and the testimony before me from the officer is, this is what I told him, and obviously he wasn't at work if he was over at his wife's house.  So that would be a violation.
>
> . . . .
> Obviously, this was not for work purposes, so he did not have permission to travel to Duval County for purposes of going to his wife's residence. . . . That is a violation.
>
> Secondly, even though it says condition three, the allegations in this affidavit do allege a battery on the wife, and to me it's kind of a – I don't see how you could be possibly prejudiced by saying, well, they didn't say that's a violation of condition five.
>
> It is a violation of condition five.  It's not worded that way, but there certainly is evidence that he, in fact, violated condition five by his battery, grabbing Tammy Ford's . . . [g]rabbing her arm and pushing her into the apartment and all that stuff.  So even though they didn't say, you violated this condition, they alleged it, and the facts were presented on that.
>
> [The judge then finds no violations on the next two allegations.]
>
> So, anyway but I do find a violation as to the first allegation.

*Id.* at 42-45.  As indicated above, after denying Ford's Rule 3.850 motion, the state court entered an order clarifying the ruling regarding the conditions violated, adding the following statement to the Amended Order of Revocation of Probation:

> **The Court found that the offender violated Condition 3 (leaving the county of residence without first procuring his probation officer's consent) as set forth in the allegation in the 9/10/07 VOP Affidavit. The Court also found that although the first allegation of the VOP affidavit did not specifically state a violation of condition 5 (violating the law), the facts alleged described a violation of condition 5 and the facts presented at the hearing supported it.  Either of these violations supports the Court's finding of willful and substantial violation of probation.**

*Id.* Ex. N at 81-82.

In finding Ford violated Condition (3) of his probation, the state court rejected defense counsel's argument and accepted the testimony of Officer Stewart regarding permission given to Ford to travel to Duval County only for work purposes.  In finding a violation of Condition (5), the state court accepted the testimony of Ms. Ford regarding Ford's appearance at her home and his conduct, all of which was charged in the VOP affidavit:

> The offender violated condition 3 of his orders of probation which states, "You will not change your residence or employment or leave the county of your residence without first procuring consent of your officer," in that the offender left Clay County on Monday, April 9, 2007, without Correctional Probation Specialist J.E.B. Stewart's permission.  According to a Jacksonville Sheriff's Office Incident Report, the offender traveled to 2553 SR A1A, #402 in Atlantic Beach, Florida on that date.  Tammy Ford, resident of the apartment (and offender's ex-wife), described to plice how the offender was waiting in his vehicle when she arrived home at 8:45pm. The offender came out of his vehicle, grabbed Tammy Ford's arm and pushed her into her apartment saying he just wanted to talk.  The offender came in after her, according to the report, and they began to wrestle.

Doc. 21 Ex. B at 293.  The VOP also alleged violations of Condition (5) as to a different victim, and the state court found no violations as to those allegations.  *See id.*; *see also id.* Ex. C at 44-45.  The trial court determines credibility issues, and the record supports

the state court's findings.  "Federal habeas courts have 'no license to redetermine

credibility of witnesses whose demeanor was observed by the state court, but not by

them.'" Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) (quoting

Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).

The state court did not err in concluding Ford had not shown deficient

performance of counsel.  Ford has not shown the state court ruling rejecting this claim

resulted in a decision that was either (1) contrary to, or involved an unreasonable

application of, clearly established U.S. Supreme Court precedent, or (2) based on an

unreasonable determination of the facts in light of the evidence presented in the state

court proceeding.  See 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

## Conclusion

Based on the foregoing, Petitioner Larry Ford is not entitled to federal habeas

relief.  The amended § 2254 petition (Doc. 15) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States

District Courts provides that "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant," and if a certificate is

issued "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal

must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional

right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000)

(explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** Petitioner Ford's amended § 2254 petition (Doc. 15).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on September 16, 2015.

S/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this**

report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.